May it please the Court, James White, the Federal Defenders, on behalf of the Appellant, Mr. Jimenez-Sanchez, I will make my own effort to reserve my one minute for rebuttal, if possible. The trial here was infected with two significant and prejudicial evidentiary errors. First, the District Court permitted unnoticed and unqualified quasi-expert testimony, which directly addressed the one disputed issue at trial. But who started it? My reading is Defense Counsel solicited Agent Brenner's opinion that Jimenez-Sanchez exhibited a behavioral characteristic of a drug user. So why should the District Court have recognized, without the benefit of an objection, that the inquiry as to Mr. Jimenez-Sanchez's ability to claim White Cross sought improper expert testimony? The Defense Counsel started it. You know, I mean, all of us that have been in court knows, yeah, you open the door, swings wide open. Two answers, Your Honor. One, it's true that the Defense brought this up during cross-examination. Ask. Us? No, not us. Yeah, but I mean, don't ask if you don't like the answer. Well, it's not that we're objecting to the answer that Agent Brenner gave on the cross-examination. It's the answers he gave on redirect that are objectionable here. But when you open the door, you crack it, it swings open. That's the problem. Your Honor, no question ever opens the door to inadmissible evidence. Shouldn't someone have objected then? That's why it seems like this morning the theme is plain error. That's why we're here on this particular case. Okay. I'll let you talk. I'm sorry. I admit this, Your Honor. But I would maintain that, yes, of course, the defense asked this question about why. I say that it was very limited because based on the percipient observations during the interview at the station house, he asked Agent Brenner, why did you stop the interview, knowing the reason was because he sent him to a detoxification hospital for heroin ingestion. Now, that was going, of course, to go to the defense that he did not have the conscious desire to enter the United States, which is an element of the attempted offense which the government charged. Now, that was very limited. That was about his percipient observations at the time of the interview. The redirect, however, went far beyond that to go into abstract questions of drug classification, the effects of various types of drugs, the duration and trajectory of drug influence, and then to cap it off, the quintessential expert testimony of a hypothetical question. The door was not open to any of this. And even if it was a fair area to go into some of this about drugs ingestion and the influence of drugs in general, it didn't waive the requirements under Rule 701 and 702. That was still had to – the district court has an independent duty under 702 to act as a gatekeeper, to keep out junk science. A border patrol agent testifying about chemistry and physiology is junk science. And that's what we have here. It was highly prejudicial because this was the one disputed issue at trial. Like in the case of Bluford, which I cited, which was a prosecutorial misconduct case, the court recognized that when it's the one disputed issue, the prejudice effect of the error is magnified. Here it's undisputed that it was unnoticed testimony. In fact, the government claims they couldn't even anticipate this defense at trial, which I think is a bit implausible since they had the same reports that the defense had. They also concede, because they go down the 701 route, that this was unqualified testimony. They're conceding that Agent Brenner was not qualified to render this kind of opinion because they classify it as lay opinion. But I think when you look at the Figueroa Lopez case, it's obvious this is not proper 701 lay opinion. In fact, it's not even opinion. Most of it is assertions of straight factual matter. Cocaine, heroin has this effect. When you ingest it, it lasts this long. Here are the initial effects. Here's how a person would react who was under the influence of heroin. Those are factual assertions. That's not opinion. And that's specialized knowledge. Those things, they're not based on percipient observation because they were abstract facts about drug ingestion. Those are things that are forbidden under Rule 701. Now, once you introduce, I don't know if you were trial counsel, but once the defense introduced evidence that he had ingested heroin, would the government have been able to bring in someone who was qualified to testify on the effects? Absolutely, Your Honor. And I believe that a certain amount of the redirect was proper. For instance, going into the foundation of Agent Brenner's ability to recognize this jaw movement. Why was he able to recognize that jaw movement as related to someone who was a drug abuser? And also the foundation for his opinion that he didn't think Mr. Jimenez was under the influence. He stopped the interview because that is ICE policy. But he didn't actually believe he was under the influence at the time of the interview. Those were all fair game because those were based on his perceptions and the basis for what he did. But as far as talking about abstract knowledge about drugs, about the trajectory of crack and heroin ingestion, the characteristics of different classes of drugs. To say we were to find this was error, do we then review for whether or not it was harmless error? Yes, Your Honor. I think that's certainly part of the plain error is to see if substantial rights were violated. And I think that's definitely true here because this was the one contested issue at trial. It couldn't help. I mean, the government pretty much concedes it. They said that, yes, this could have gone to undermine this one issue. But how you can say that it undermines the one issue at trial and then say substantial rights were not affected, that doesn't make sense to me. It affected the substantial rights because it was the only thing that was disputed at trial. Without this testimony, a reasonable juror could have thought that just an hour before he started to cross over a white cross to cross the border, he had ingested a controlled substance. It wasn't the defense that brought out the heroin. It was very limited. The defense cross didn't even bring out what type of drug it was, but said that he had ingested a controlled substance an hour before crossing at the very time when he had to make the decision to come over the hill. And if he was under the influence of a strong substance at that time, a reasonable juror could say, well, I don't believe he had the conscious desire to enter the United States illegally. There is a reasonable chance that there could have been, a juror could have voted for acquittal, but for an agent testifying to various physiology and chemistry subjects, and therefore adding weight to his belief that nobody could cross White Cross at night while under the effects of heroin. A prototypical hypothetical question. Is there any dispute that he had ingested heroin? No. They took his word. In fact, probably the indication that the government believed it was they sent him to the detoxification hospital to dry out, stopping the interview in midstream. So there wasn't any dispute that he had taken a drug. The only question was, what effect did that have on his mental state? Whether he had the specific intent to violate 1326. And since the timing was very critical, he had ingested it around 9 o'clock. Agent Brenner said it takes about an hour to walk over White Cross. So that means he would have had to start out from Mexico about one hour after ingesting an unknown amount of heroin. And therefore, just at the very time he was setting out, his mental state could very well have been affected by the influence of this powerful drug. Which, Agent Brenner agreed, differs depending on the amount, the purity, and the person's habituation to the drug. All of those things which we don't know and have no particular information on. There's no question that the government had a legitimate means to counter this evidence. They didn't use it. They used a border patrol agent to bring the... Maybe that's why there was no objection. It could be. And why, honestly, why there was no action by this district judge. Is there anything that was wrong about what the officer said? It just was that it came from the officer as opposed to... I think the problem is I have no idea whether he said is even true. When he said that 15 to 20 minutes after you take heroin, you mellow out and you won't want to do anything, I don't know if that's true. It certainly would make a difference if he said, if he'd ingested PCP or cocaine or methamphetamine, then he might be completely wired up and willing to climb several mountains. But when the fact, when an agent says, well, 20 minutes after you take heroin, you don't feel like doing anything, so I don't think anybody would cross that mountain after they've taken heroin. What else was the jury to think? Here was a uniformed agent telling this as established fact. They're likely to believe it. And, therefore, not listen to the defense argument that he didn't have the intent to do that at the time that he set out, because the agent said he didn't even have the physical ability to do it at that time. You had to preserve time. Yes, I will reserve my 17 seconds. Thank you. Good morning, Your Honors. Michelle Pettit for the United States. I think it's pretty clear here that the issue at hand is plain error, quite honestly, when evaluating whether or not this was proper testimony. It's critical here in evaluating when we're looking at substantial rights, the prejudice of the defense, but also the integrity to the judicial proceedings, because here we have a case where the defendant raises the issue through the government's witness and uses that government witness to present its defense. He then fails to object to any of this at trial. He then uses the direct testimony and the cross-examined testimony and the redirect testimony of that witness in his closing argument to make his case for his defense. What was the other evidence as to the intent to cross the border? Your Honor, there was the full line of direct testimony from Agent Brenner, where he explained where he found the defendant, how the defendant responded when he found him, where he was. He was hiding under the brush, someone who was trying to conceal themselves with another individual. He explained how he had taken them into custody. They were seen by scope operators. That was all testified on the record. And that was in the direct testimony from the United States. It wasn't until the cross-examination by the defense, where they brought up this point about the interrogation, the interview, which was stopped based on this motion that the agent saw of the jaw of the defendant and he asked him if he had been taking any type of narcotics. I think it's critical here that the defense uses this testimony from the government's witness throughout his defense. He then doesn't object to any of this testimony. And one point was I was reviewing, preparing for today, and I had not really made this clear in my briefing, but in the excerpts of record on page 38 through 40, the defense is sentencing. The defendant actually admits all the elements of the crime in order to get acceptance responsibility. And the judge gives him a minus two for acceptance after he admits that he consciously and knowingly entered, intentionally entered the United States, which takes away that total defense. And he did that for his benefit to get a reduced sentence. Now he wants to come before this court and ask that that testimony affect the case and vacate the sentence and return it back to the trial court. Well, that would be an absolute attack on this integrity of judicial proceedings if a defendant was allowed to do that under the claim. Well, I'm trying to envision how having been a public defender for a while and having been a prosecutor and having been a trial judge, that how much the lawyers would really like a judge butting in on when there is no objection and the defense wants to use certain things for their case and the prosecution is rehabilitating a witness from their perspective and there's no objection. I mean, does the judge really know more at that particular time to tell the lawyers, well, you know, I think you should do your direct like this. I think you should do your cross like that. No, don't mention that in your opening. I think that's the exact problem, Your Honor, because the judge doesn't know how much the defense is actually using this testimony for his benefit, for his client's benefit, to present his defense. So for the judge to step in and take this testimony that was clearly lay opinion, it was observations of Agent Brenner. And the judge, all of us in the courtroom and the jury, have to take Agent Brenner based on his training and experience of who he is. His observations through his eyes are based on what he has experienced as a police officer in Atlanta. So he's going to have a different observation than a Border Patrol agent who never has seen someone who has endured the influence of drugs. That has to be explained to the jury so that they can make a proper evaluation of the observations that Agent Brenner made. It is incumbent on the judge to allow that testimony to be presented and it's the responsibility of the defense, the defense counsel, to make those proper objections. Because if it had not been for the defense counsel raising the issue, it never would have been presented in the trial. It was not presented by the United States in direct testimony. And so it was incumbent upon the defense to then ask the questions that they needed to present their defense, because that's why they were using him. It's important to note they didn't call an expert. And that's where the defense makes an argument about, or I should say the appellant makes an argument that the government was surprised. The government wasn't surprised by this defense, but the government was not anticipating it because there was no expert that was ever noticed on the defense side. Because what the defense was preparing to do was just present it through the witness of the government. And when they open that door and they go through a door where the agent actually has experience that they weren't prepared for, that's the risk that the defense takes. And they did get the evidence that they wanted for the defense, but they also got an experienced agent who had experience on the streets of Atlanta with people that were under the influence. And therefore, he presented testimony related to his experiences and what he has seen in individuals on the street of Atlanta and compared to what he saw on that day that he arrested Mr. Jimenez-Sanchez. And he made that comparison for the jury. So the jury can know exactly the background, his background, and his observations of this particular defendant and whether or not he believed that defendant was under the influence and knew what he was doing when he crossed into the United States. All right. Thank you, counsel. Is there any – if there's any further questions, then I will conclude with that, Your Honor. Thank you. Thank you. Well, we'll give you 30 seconds. 30 seconds. I want to, first of all, point out I was not the trial attorney. I'm happy to say. But, first of all, as to the integrity, the court has a duty to ensure the integrity of the proceedings because of keeping out junk science like this. And evidence is not allowed under either Rule 701 or Rule 702. Judge Callahan pointed out what happens at trial very often. We all know what happens at trial often, is that the defense uses the prostitution witnesses to get out what they need for the defense. Well, it's sort of a thing, Your Honor, if you're going to try my case, don't lose it for me. You know, I mean, trial lawyers don't love judges butting in when they're doing – they've talked to their clients, they know what they want to do, and if there's no objection at some level, you've got to rely on that. And, you know, once it comes in, it isn't hearsay anymore. It's evidence in the trial. And lawyers do that on purpose sometimes. That's true, Your Honor. And there is this kind of fiction that plain error is what the trial judge should have done. We're not actually saying that Judge Moskowitz should have jumped in here, though he did jump in in other cases, unprovoked, like the Doyle error I pointed out in my briefing. We're not – we don't need to go with the fiction that Judge Moskowitz should have stopped this. We're reviewing this on appeal as plain error. That means was there error that a judge would recognize, could have ruled against if there had been an objection, and that it violates substantial rights and the integrity, and that's true of this case. And this Court can act on that basis. One final thing about the acceptance responsibility of sentencing. We can't be looking at evidence of what happened at sentencing to determine what the judge should have done at trial. That's – what was admitted at sentencing is not the same thing as maintaining his one defense at trial. He had a right to put the government to its test, to prove everything, including mental states beyond the reasonable doubt, whether or not later on he admitted what was necessary in order to get a sentencing break. Thank you. Okay, case charges will be submitted. The Court will take a brief recess before the next case.
judges: Reinhardt, Wardlaw, Callahan